Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| LUPIS ENTERPRISES INCORPORATED<br><br>Peticionario<br><br>V.<br><br>EDUARDO FIGUEROA PADILLA Y OTROS<br><br>Recurridos | KLCE202500188 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2020CV02231 (506)<br><br>Sobre: INJUNCTION (ENTREDICHO PROVISIONAL, INJUNCTION PRELIMINAR Y PERMANENTE) Y OTROS |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Juez Romero García[1] y el Juez Adames Soto

Grana Martínez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 27 de junio de 2025.

Comparece Lupis Enterprises Inc. (peticionario o corporación Lupis) mediante recurso de *Certiorari* y nos solicita que revisemos una *Resolución* emitida 11 de diciembre de 2024 y notificada el 12 de diciembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* la *Moción de Sentencia Sumaria* presentada por el peticionario.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto de *certiorari*.

I.

Los hechos procesales pertinentes al recurso ante nuestra consideración son los siguientes:

El 21 de julio de 2020, el Lcdo. Rafael Sánchez Hernández, (Lcdo. Sánchez), como presidente y en representación de Lupis

---

[1] Mediante Orden Administrativa OATA-2025-090 se designa a la Hon. Giselle Romero García en sustitución del Hon. Abelardo Bermúdez Torres

Número Identificador

RES2025 _____

Enterprises Inc., presentó una *Demanda* de sentencia declaratoria e injunction en contra del Sr. Eduardo Figueroa Padilla (Sr. Figueroa), la Sra. Diana Jové Vélez (Sra. Jové), la Sociedad Legal de Gananciales compuesta por ambos y Acar Enterprises Inc., (los recurridos). En apretada síntesis, el peticionario reclamó la suma de $400,000.00 a los recurridos en concepto de préstamos obtenidos por el Sr. Figueroa cuando éste era accionista y nunca rembolsados a la corporación Lupis; que se apropió de dinero perteneciente a la corporación y no entrego los documentos corporativos, entre otras. Además, el peticionario añadió a ACAR Enterprises Inc. (ACAR) como parte de la *Demanda*, ya que tenía una deuda pendiente con Lupis.

El 25 de febrero de 2021, ACAR radicó la *Contestación a la Demanda*. En esencia, negó las mayorías de las alegaciones y presentó varias defensas afirmativas. Entre ellas, frivolidad, dolo, emplazamiento defectuoso, falta de legitimación y jurisdicción.[2] Por otra parte, el 21 de abril de 2021, los recurridos presentaron una *Contestación a Demanda, Reconvención y Demanda de Tercero*. Alegaron que el Lcdo. Sánchez Hernández ocupó el puesto de presidente de la corporación Lupis de forma ilegal y ultra vires, acción que les ha causado daños y perjuicios.[3]

Más adelante, el 21 de mayo de 2021, los recurridos incoaron una *Reconvención y Demanda de Tercero Enmendada*. En esta, invocaron el procedimiento sumario del Art. 7.15 de la Ley de Corporaciones, 14 LPRA sec. 3655, para impugnar el despido del Sr. Figueroa como presidente de la corporación Lupis, por lo cual reclamaron daños y perjuicios.[4] Por su parte, el 28 de marzo de 2023, el peticionario presentó la *Contestación a Reconvención*

---

[2] Apéndice, Anejo B, páginas 10 a 13.
[3] Apéndice, Anejo C, páginas 14 a 31.
[4] Apéndice, Anejo D, páginas 22 a 26.

*Enmendada.* En síntesis, negó las alegaciones presentadas en la *Reconvención y Demanda de Tercero* incoada por los recurridos.[5]

Varios años después y tras varias incidencias procesales, el 26 de agosto de 2024, se celebró una vista de estatus. Durante la vista, luego de discutir varios asuntos, el foro primario concedió a las partes hasta el 30 de septiembre del año en curso para culminar el descubrimiento de prueba.[6]

Así las cosas, el 11 de diciembre de 2024, el peticionario presentó ante el foro primario una *Moción de Sentencia Sumaria* en referencia a la *Reconvención y Demanda a Tercero* presentada por los recurridos. En síntesis, alegó que los recurridos no ostentaban legitimación activa para presentar una acción interdictal conforme el Art. 7.15 de la Ley de Corporaciones, *supra*, ya que al momento de presentar la reconvención, el codemandado, Sr. Figueroa Padilla ya no era accionista, director u oficial de la corporación Lupis. Esto pues el licenciado Sánchez Hernández había adquirido todas las acciones de Lupis, el 24 de octubre de 2018 y en esa misma fecha Figueroa Padilla había sido removido de sus puestos corporativos. Por otra parte, en lo pertinente a la reclamación de daños y perjuicios, el peticionario alegó que dicha acción está prescrita, ya sea conforme el Código Civil o la Ley Laboral de Puerto Rico.[7]

En respuesta, el 11 de diciembre de 2024, notificada el 12 de diciembre del mismo año, el foro primario emitió *Resolución* en la que declaró *No Ha Lugar* la *Moción de Sentencia Sumaria* presentada por el peticionario. El foro apelado fundamentó su decisión al explicar que la *Moción* se sometió 72 días después de haber culminado el descubrimiento de prueba.[8]

---

[5] Apéndice, Anejo G, páginas 41 a 45.
[6] Apéndice, Anejo N, páginas 53 a 54.
[7] Apéndice, Anejo O, páginas 55 a 149.
[8] Apéndice, Anejo P, páginas 150 a 151.

Insatisfecho, el 21 de diciembre de 2024, el peticionario presentó un documento intitulado *Moción de Reconsideración en cuanto a Consideración de Moción de Sentencia Sumaria*. En este, alegó que, interpretó la fecha para concluir el descubrimiento de prueba, como la fecha límite para circular descubrimiento, no para culminar el mismo. En su defensa arguyo que ambas partes solicitaron extensión de dicho término, petición que fue rechazada por el foro. Además, resaltó que ese mismo día envió un descubrimiento adicional a los recurridos, asunto que no se podía esperar que se contestara el mismo día. Añadió que los recurridos tampoco habían cumplido con el descubrimiento solicitado.[9] En *Oposición a la Moción de Reconsideración*, el 24 de diciembre de 2024, los recurridos señalaron que en ningún momento el peticionario planteó que faltaba descubrimiento de prueba alguno para cumplir en término con la presentación de la sentencia sumaria. Por tanto, solicitaron que se denegara la *Moción de Reconsideración* a favor del peticionario.[10]

Luego de analizados los argumentos de las partes, el 27 de enero de 2025, el foro primario declaró *No Ha Lugar* la *Moción de Reconsideración* presentada por el peticionario.[11]

Inconforme, el 25 de febrero de 2025, el peticionario presentó un recurso de *certiorari* ante esta Curia, en el que planteó que el foro primario incidió al cometer el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia, Sala de Bayamón, en su interpretación de la Regla 36.2 de Procedimiento Civil y al denegar la moción de sentencia sumaria de la parte peticionaria, a pesar de que el descubrimiento de prueba no se había completado.

Los recurridos comparecieron en oposición. Con el beneficio de ambas posturas, resolvemos.

---

[9] Apéndice, Anejo Q, páginas 152 a 162.
[10] Apéndice, Anejo R, páginas 163 a 164.
[11] Apéndice, Anejo Z, páginas 194 a 195.

II.

El *certiorari* es un recurso extraordinario, mediante el cual un foro judicial apelativo puede revisar a su discreción una decisión de un tribunal recurrido. 32 LPRA sec. 3491; *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Mun. Caguas v. JRO Construction Inc.,* 201 DPR 703, 710 (2019). Aunque la característica principal del recurso de *certiorari* es su carácter discrecional, tal determinación no es irrestricta, porque está sujeta a los criterios señalados en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.

La regla 52.1 de Procedimiento Civil, supra, adoptada por el Tribunal Supremo de Puerto Rico, conforme a la recomendación del Comité Asesor Permanente de las Reglas de Procedimiento Civil en el 2009 disponía:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
>
> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia, sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.
>
> In re-Aprobación Rs. Proc. Civil, 176 DPR 673, 804 (2009). (Énfasis suplido).

La intención de la normativa era clara, circunscribir la revisión de las resoluciones u órdenes interlocutorias solamente a cuando se recurriese de una resolución u orden relacionada a

remedios provisionales, injunction o la denegatoria de una moción de carácter dispositivo. Esto respondía a la necesidad de permitir que los procesos ante los foros de primera instancia transcurrieran sin dilaciones innecesarias sobre asuntos que se podrían corregir en la marcha ante el propio foro o eventualmente en un recurso apelativo.

Ciertamente, la Regla sufrió enmiendas en su proceso ante la Legislatura, quien eventualmente aprobó el Proyecto de Reglas de Procedimiento Civil, enmendando algunas de estas. Específicamente, en cuanto a la Regla 52.1 se amplió el alcance previsto por el Tribunal Supremo para añadir, por excepción, la revisión de órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurriese de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia.[12]

Durante la discusión en la Legislatura de dicha enmienda el entonces juez presidente del Tribunal Supremo de Puerto Rico, Federico Hernández Denton explicaba que la propuesta Regla 52.1, según adoptada por el Tribunal Supremo, había limitado el alcance de las revisiones interlocutorias. A tales efectos expresó y citó: "como parte del esfuerzo para agilizar la adjudicación de los procesos civiles, la Regla 52.1 reduce las situaciones en que se pueden expedir autos de certiorari para revisar órdenes y resoluciones interlocutorias, limitándose a resoluciones dispositivas". Expresaba, además, que las limitaciones que se proponían disminuían la práctica de solicitar revisión de órdenes y resoluciones que no adelantaban el proceso, sino que más bien lo prolongaban y creaban dilaciones injustificadas en los pleitos

---

[12] Ley 220 de 29 de diciembre de 2009.

ordinarios. Con acierto, el ex juez del Tribunal de Primera Instancia y vicepresidente de Comité Asesor Permanente de Reglas de Procedimiento Civil, Héctor J. Conty Pérez, expresaba que "[a]ctualmente los calendarios de los jueces y juezas están supeditados a que una parte recurra al Tribunal de Apelaciones para revisar cualquier orden o resolución dictada en el caso, ya sea temprano en el pleito, durante o hasta en pleno juicio. Este mecanismo dilatorio es el arma más efectiva que puede tener una parte para cansar a otra que no tenga los recursos suficientes para mantenerse litigando en un pleito perennemente.[13]

Las limitaciones propuestas a la regla respondían a la necesidad de agilizar los procesos judiciales. Sin embargo, durante la discusión del proyecto, las Comisiones Legislativas propusieron enmendar la regla para ampliar su aplicación y permitir las apelaciones de resoluciones interlocutorias, en ciertos casos por excepción. Así también, poco tiempo después, nuevamente, la Legislatura se insertó en la discusión de la reglamentación procesal civil ante los tribunales y aprobó la Ley 177-2010, para enmendar nuevamente la Regla 52.1 y ampliar aún más el alcance de la revisión de órdenes o resoluciones, en esta ocasión, a aquellas que revistan de interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Finalmente, la Regla 52.1 de Procedimiento Civil, hoy dispone que:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando

---

[13] Informe Positivo sobre el P. de la C. 2249, 11 de noviembre de 2009.

> se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V.

Por lo tanto, aun cuando la Regla 52.1 de Procedimiento Civil se enmendó para ampliar el ámbito de revisión de resoluciones u órdenes interlocutorias, no podemos perder de perspectiva que el objetivo primordial de la enmienda a las Reglas de Procedimiento Civil de 1979 era agilizar los procedimientos judiciales.[14]

La razón de ser de la enmienda es particularmente importante, pues cada norma tiene un propósito basado en un principio general de derecho que la inspira, una razón de ser, un objetivo particular, una política pública que la subyace a la mera literalidad. La eficiencia y funcionalidad del sistema requiere que los jueces no solo apreciemos la norma en su sentido literal, sino que también auscultemos su propósito para que la interpretación y aplicación a nivel judicial sea cónsona con sus delineamientos.[15]

No obstante, y aun cuando tuviéramos jurisdicción para expedir el recurso al amparo de la Regla 52.1 de Procedimiento Civil, *supra,* todavía debemos auscultar los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. Tales criterios guían nuestro análisis sobre la decisión de intervenir con la resolución u orden interlocutoria recurrida. Así las cosas, la Regla 40, *supra,* dispone que:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

---

[14] Véase, J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2nda edición, USA, Publicaciones JTS, 2011, Tomo I, pág. 11.

[15] E. Rivera García, *Compendio sobre el sistema acusatorio; reflexiones sobre el debido proceso legal y la protección a los derechos fundamentales en el sistema acusatorio*, Publicaciones Gaviota, págs. 17-18.

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Como mencionáramos anteriormente, la característica distintiva del certiorari se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Sin embargo, la discreción no opera en el vacío y en ausencia de parámetros que la encaminen. El foro apelativo cuenta con los criterios enumerados en dichas reglas para asistirlo y determinar si en un caso en particular procede que se expida el auto discrecional de certiorari. *BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023).

Puntualizamos que no se favorece la revisión de asuntos interlocutorios en ausencia de los criterios mencionados. *800 Ponce de León Corp. v. American International Insurance Company of Puerto Rico,* 205 DPR 163, 175-176 (2020); *IG Builders et al. v. BBVAPR,* supra, pág. 338. El permitir recurrir de las diversas resoluciones dictadas en los procedimientos judiciales que culminaran en una sentencia final, representa un inconveniente para el desenvolvimiento lógico y funcional del proceso, porque interrumpe

la marcha ordenada del proceso litigioso. *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 730 (2016).

Por último, es pertinente enfatizar que se ha resuelto que el denegar la expedición de un auto de certiorari no constituye una adjudicación en los méritos, sino que "es corolario del ejercicio de la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008). La parte afectada con la denegatoria de expedirse el auto de certiorari, tiene a su favor el revisar el dictamen final en el que el foro primario resolvió la causa de acción. *Negrón Placer v. Sec. de Justicia,* 154 DPR 79, 93 (2001); *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 DPR 651, 658 (1997).

En otro orden de cosas, la Regla 36.1 de Procedimiento Civil, dispone que: [u]na parte que solicite un remedio podrá presentar, en cualquier momento después de haber transcurrido veinte (20) días a partir de la fecha en que se emplaza a la parte demandada, o después que la parte contraria le haya notificado una moción de sentencia sumaria, pero **no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba**, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada. (Énfasis nuestro). 32 LPRA Ap. V.

III.

No hay controversia entre las partes que el descubrimiento de prueba culminó el 30 de septiembre de 2024. Tampoco existe duda alguna sobre los términos establecidos en la regla 36.1, supra. Este Tribunal no intervendrá con el ejercicio de la discreción de los

tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". Lluch v. España Service Sta., 117 DPR 729, 745 (1986).

IV.

Por los fundamentos antes expuestos, se deniega la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones